Mr. Chief-Justice Waite
delivered the opinion of the court.
The material provisions of the contract upon which this suit is brought are as follows :
“Article I. That the said Black, Kitchen & Martin shall receive at any time, in any of the months from April 1, 1868, to March 31, 1869, inclusive, from the officers or agents of the Quartermaster’s Department at Fort D. A. Bussell, in the Territory of Dakota, or such point as may be determined upon during the year, on the Omaha branch of the Union Pacific Railroad, west of Fort D. A. Bussell, or at Fort Laramie, Dakota Territory, all such military stores aud supplies as may be offered or turned over to them for transportation, in good order and condition, by the officer or agent of the Quartermaster’s Department, at any or all of the above points or places, and transport *91 tbe same with dispatch, and deliver them, in like good order and condition, to the officer or agent of the Quartermaster’s Department on duty or designated to receive them at any of the posts or depots that are now or may be established in the State of Nebraska west of longitude 102 degrees, in the Territory of Montana south of latitude 47 degrees, in the Territory of Dakota west of longitude 104 degrees, in the Territory of Idaho east of longitude 114 degrees, and in the Territories of Utah and Colorado north of latitude 40 degrees, including, if necessary, Denver City, or at any other poiu ts or posts on the route, agreeably to the instructions they may receive from the officer or other authorized agent of the Quartermaster’s Department charged with the duty of forwarding the stores and supplies at Fort D. A. Russell, or other place of departure; and for the faithful performance of such service they shall be paid in the manner hereinafter provided for in article XVII of this agreement, and at the rates specified and shown in the tabular statement hereto annexed and signed by the parties to this agreement, which statement is considered as part hereof.
“Art. II. That the said Black, Kitchen & Martin agree and bind themselves, their heirs, executors, and administrators, to transport under this agreement, from the posts, depots, or stations named in article I, or from and to any other post, depots, or stations that may be established within the district described in said article, any number of pounds of military stores and supplies from and between one hundred thousand pounds and twenty-five millions of pounds in the aggregate.”
“Art. XIV. It is understood that if at any time stores or supplies are required to be transported back to any point on the road, or to any of the original points of departure, or from one point to another within the route, they shall be carried upon the same terms and conditions as herein provided.”
“Art. XVII. For and in consideration of’ the faithful performance of the stipulations of this agreement, the said Black, Kitchen & Martin shall be paid at the office of the Quartermaster’s Department at Omaha, Nebr., in the legal currency of the United States, according to the distance supplies are transported, and agreeably to the rates specified in the tabular statement hereto annexed, signed by the parties to this agreement.”
The transportation for which compensation is now asked *92 was “from one point to another within the route,’7 and full payment has been made therefor “ according to the distance the supplies were transported, and agreeably to the rates specified in the tabular statement.”
It is claimed, however, that as Fort Phil Kearney, the point at which the supplies were received for transportation, “ was within the route,” the contractors are entitled to compensation for the distance their teams traveled unloaded to reach that place, as well as for the distance the supplies were carried. This claim is based, not upon any express provision in the contract requiring or even permitting such payment, but because, as is insisted, the service rendered was not included in the obligations of the contract. The argument is that the places named in Article I are the only places at which the contractors were bound to receive the supplies to be transported. But this excludes from consideration Articles II and XIY, by which the contractors bound themselves not only to transport under the agreement from the posts, depots, and stations named in Article I, but also “ from and to any other posts, depots, or stations that might be established within the district described in said article,” and “ from one point to another within the route.” For the purposes of construction we must look to the whole instrument. The intention of the parties is to be ascertained by an examination of all they have said in their agreement, and not of a part only.
In Caldwell’s Case (19 Wall., 264) we decided that the terms “ posts, depots, or stations,” as used in Articles I and II of his contract, “in the presence of actual war and in reference to military stores,” included military posts and stations alone. Consequently, it was held that Caldwell could not claim the right of transporting supplies from railroad stations within the district which were not at thesame time military posts, stations, or depots. In the present case the starting-poiut was Fort Phil Kearney, a military “ post,” and, consequently, a “ point ” within the district at which the contractor could, under the ruling in Caldwell’s case, be required to receive stores and supplies for transportation. It is a noticeable fact, though perhaps, under the circumstances of this case, unimportant, that the provision for transportation “ from one point to another within the route,” which is found in Article XIV of the contract in this case, is not to be found in Caldwell’s contract. His contract was for the year 1866; this for 1868-’9. It is not impossible that the *93 claim made by Caldwell may have suggested the necessity for this change in the terms of such agreements. In Caldwell’s contract, too, Article I provided that stores should be received for transportation “ at any points or places at which posts or depots shall be established.” Here the same article provided that they should be received “ at such point as may be determined upon during the year, on the Omaha branch,” &e., omitting the further provision that it should be a “post” or “depot.”
We are clearly of the opinion that the services rendered by these appellants were within the requirements of their contract, and that the only compensation they are entitled to is for the distance the articles were actually carried, and agreeably to the rates specified.
The judgment is affirmed.